UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL WU AND EMILY WU, INDIVIDUALLY AND AS NEXT FRIENDS OF N.W. | § § § § | |
| *Plaintiffs* | § § | CASE NO. 4:20-cv-1747 |
| vs. | § § | JURY REQUESTED |
| TEXAS CHILDREN'S HOSPITAL AND BAYLOR COLLEGE OF MEDICINE | § § § § | |
| *Defendants* | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, Daniel Wu and Emily Wu, Individually and As Next Friends of N.W. (hereinafter collectively referred to as "Plaintiffs"), and file this Original Complaint complaining of Defendants Texas Children's Hospital and Baylor College of Medicine (hereinafter collectively referred to as "Defendants"), and in support thereof, would respectfully show as follows:

### I.
### PARTIES

1. Plaintiff, Daniel Wu, is an individual who is a citizen of the United States and the Commonwealth of Massachusetts.

2. Plaintiff, Emily Wu, is an individual who is a citizen of the United States and the Commonwealth of Massachusetts.

3. Defendant, Texas Children's Hospital, is a Texas nonprofit corporation with its principal place of business in Harris County, Houston, Texas. It may be served through its registered agent, Lance A. Lightfoot, 6651 Main St., Suite E520, Houston, Texas 77030.

4. Defendant, Baylor College of Medicine, is a Texas nonprofit corporation with its principal place of business in Harris County, Houston, Texas. It may be served through its registered agent, James Banfield, One Baylor Plaza, Suite 106A, Houston, Texas 77030.

## II.
## JURISDICTION AND VENUE

5. The Court has jurisdiction under 28 U.S.C. § 1332 based on diversity because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this district because Defendants reside in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this district. *See* 28 U.S.C. § 1391(b) (1); 28 U.S.C. § 1391(b) (2).

## III.
## FACTUAL ALLEGATIONS

7. N.W. was born in 2017, at Texas Children's Hospital (TCH), in Houston, Texas.

8. N.W.'s initial hospitalization at TCH continued through January 15, 2018.

9. Shortly after birth, N.W. was diagnosed with pulmonary atresia with intact ventricular septum, tricuspid stenosis, and arthrogryposis.

10. In a January 15, 2018 TCH discharge summary documented by Renna Lange, RN, MSN, CPNP-PC, N.W. was identified as having a difficult airway.

11. The January 15, 2018 discharge summary documented by Nurse Practitioner Lange also identified N.W. as a difficult intubation patient.

12. On August 29, 2018, N.W. was admitted to TCH for right heart catheterization and balloon dilatation of the atrial septal defect and patent ductus arteriosus, which cardiologist Henri Justino, MD performed in the hospital's cath lab.

13. The medical records document that N.W. was brought to the cath lab at 7:52 a.m. The procedure started at 10:04 a.m., ended at 11:43 a.m., and he was out of the room at 12:13 p.m.

14. At 12:15 p.m., Tania Alfaro, RN noted that Dustin Hipp, MD and Elizabeth Rossman Beel, MD, were at N.W.'s bedside, his right lower extremity (RLE) pulse was not palpable or audible with a doppler and was mottled and cooler than the left lower extremity (LLE), and she notified the team.

15. On August 29, 2018, Nurse Alfaro was an employee of Texas Children's Hospital who provided care to N.W. within the course and scope of her employment.

16. On August 29, 2018, Dr. Hipp was a pediatric critical care fellow employed by Baylor College of Medicine who provided care to N.W. within the course and scope of his employment.

17. On August 29, 2018, Dr. Beel was a pediatric anesthesiology fellow employed by Baylor College of Medicine who provided care to N.W. within the course and scope of her employment.

18. Nurse Alfaro's note at 4:00 p.m. documented that pulses in RLE were absent, bilateral lower extremity remained dusky, the RLE was cooler than the LLE, Lovenox was to be given when available by the pharmacy, and the critical care team (CCM) was aware.

19. At 4:40 p.m., Nurse Alfaro noted that the CCM team planned to extubate. She also documented that the bedside registered nurse had expressed concern over pulselessness on the

RLE and orders to lay flat after the cardiac catheterization procedure, and CCM was aware but would move forward with extubation after consulting cardiology.

20. N.W.'s father, Daniel Wu, is a pharmacist.

21. N.W.'s mother, Emily Wu, is a physician and surgeon.

22. Before extubation, Daniel and Emily expressed their concerns that N.W. was not awake and alert enough to be extubated.

23. Satid Thammasitboon, MD, Dr. Beel, and Dr. Hipp were present for N.W.'s extubation.

24. On August 29, 2018, Dr. Thammasitboon was a pediatric critical care attending physician employed by Baylor College of Medicine who provided care to N.W. within the course and scope of his employment.

25. Dr. Thammasitboon participated in N.W.'s extubation.

26. Dr. Beel participated in N.W.'s extubation.

27. Dr. Hipp participated in N.W.'s extubation.

28. Dr. Beel documented an extubation event note, noting that extubation was planned and that N.W. required reintubation at 5:45 p.m.

29. Daniel Wu was present for N.W.'s extubation.

30. Emily Wu was present for N.W.'s extubation.

31. Upon extubation, N.W. visibly struggled to breathe.

32. At 4:45 p.m., Nurse Alfaro noted that N.W. had increased work of breathing after extubation and that respiratory therapists "Philip" and "Angie" were at the bedside, along with Dr. Hipp and pediatric critical care attending Trung Nguyen, MD. In the same note, Nurse Alfaro documented "Team to reintubate" and that the parents were at the bedside.

33. On August 29, 2018, Dr. Nguyen was a pediatric critical care attending physician employed by Baylor College of Medicine who provided care to N.W. within the course and scope of his employment.

34. A correct-sized oxygen face mask was not immediately available in N.W.'s room after extubation.

35. A nurse or respiratory therapist held an incorrect-sized oxygen face mask to N.W.'s face after extubation.

36. The appropriate coupling to connect the oxygen face mask to tubing was not immediately available in N.W.'s room after extubation.

37. A respiratory therapist held two sections of tubing together by hand to prevent oxygen from seeping out.

38. After extubation and before re-intubation, N.W.'s oxygen saturation level dropped to the 30s.

39. Miguel Prada Rico, MD, an attending anesthesiologist, noted that he arrived in the PICU at 5:36 p.m. for a stat intubation.

40. Dr. Beel's procedure note for endotracheal intubation is timed 7:06 p.m. and identifies supervising physician attending physicians were Dr. Thammasitboon and Dr. Prada.

41. Approximately one hour passed between N.W.'s extubation and re-intubation, during which time he was struggling to breathe.

42. N.W. developed a new hypoxic ischemic brain injury between extubation and re-intubation on August 29, 2018.

## IV.
## CAUSES OF ACTION

### COUNT 1:
### NEGLIGENCE OF TEXAS CHILDREN'S HOSPITAL

43. Defendant Texas Children's Hospital, in the course of rendering health care and nursing services to Plaintiff N.W. on August 29, 2018, committed acts and/or omissions that constitute negligence as that term is defined by law, including:

   a. Failure of Tania Alfaro, RN and the respiratory therapy staff (identified only as "Philip" and "Angie") to recognize that N.W. had a potentially difficult airway.

   b. Failure of Nurse Alfaro and the respiratory therapy staff (identified only as "Philip" and "Angie") to ensure that all necessary resuscitation supplies and equipment, of the proper size, were immediately available in N.W.'s room before extubation.

   c. Failure of Nurse Alfaro and the respiratory therapy staff (identified only as "Philip" and "Angie") to recognize that the unit to which N.W. was assigned did not have the appropriate supplies and equipment to accommodate a pediatric patient in an emergency situation.

   d. Failure of Nurse Alfaro and the respiratory therapy staff (identified only as "Philip" and "Angie") to advocate for a pediatric cardiac anesthesiologist to be present at N.W.'s bedside for extubation.

   e. Failure of Nurse Alfaro and the respiratory therapy staff (identified only as "Philip" and "Angie") to advocate for immediate re-intubation when N.W. demonstrated difficulty breathing after extubation.

      f. Failure of Nurse Alfaro and the respiratory therapy staff (identified only as "Philip" and "Angie") to advocate for immediate notification of an attending pediatric cardiac anesthesiologist when N.W. demonstrated difficulty breathing after extubation.

44. Defendant Texas Children's Hospital is liable under the doctrine of *respondeat superior*, and/or other agency principles for its employees, vice principals, borrowed servants, representatives and/or agents.

45. The above-mentioned acts and/or omissions of Defendant Texas Children's Hospital were a proximate cause of the occurrence in question and the damages alleged by Plaintiffs.

## COUNT 2:
## NEGLIGENCE OF BAYLOR COLLEGE OF MEDICINE

46. Defendant Baylor College of Medicine, in the course of rendering medical care to N.W. on August 29, 2018, committed acts and/or omissions that constitute negligence as that term is defined by law, including:

      a. Failure of Elizabeth Rossman Beel, MD, Dustin Hipp, MD, and Satid Thammasitboon, MD to recognize that N.W. had a difficult airway before extubation.

      b. Failure of Drs. Beel, Hipp, and Thammasitboon to ensure that N.W. was fully awake and alert before extubation.

      c. Premature extubation of N.W. by Drs. Beel, Hipp, and Thammasitboon.

      d. Failure of Drs. Beel, Hipp, and Thammasitboon and Trung Nguyen, MD to re-intubate N.W. immediately after extubation, when he was visibly struggling to breathe.

  e. Failure of Drs. Beel, Hipp, Thammasitboon, and Nguyen to order notification of an attending pediatric cardiac anesthesiologist immediately after extubation, when N.W. was visibly struggling to breathe.

47. Defendant Baylor College of Medicine is liable under the doctrine of *respondeat superior*, and/or other agency principles for its employees, vice principals, borrowed servants, representatives and/or agents.

48. The above-mentioned acts and/or omissions of Defendant Baylor College of Medicine were a proximate cause of the occurrence in question and the damages alleged by Plaintiffs.

## V.
## DAMAGES

49. Plaintiffs would show that, as a direct and proximate result of the negligent acts and/or omissions of the Defendants as set out above, Daniel Wu and Emily Wu, As Next Friends of N.W. have suffered the following damages:

  a. Medical expenses of N.W. in the future, beginning with his 18th birthday;

  b. Physical pain and suffering, mental pain and anguish of N.W. in the future, beginning with his 18th birthday;

  c. Permanent physical impairment and disfigurement of N.W. in the future, beginning with his 18th birthday.

  d. Severe and permanent physical and neurological damage of N.W. in the future, beginning with his 18th birthday.

50. Plaintiffs would show that, as a direct and proximate result of the negligent acts and/or omissions of the Defendants as set out above, Daniel Wu and Emily Wu, Individually have suffered the following damages:

  a. Mental pain and anguish in the past, which will, in all reasonable probability, continue for the balance of their natural lives;

  b. Medical expenses of N.W. in the past, which will, in all reasonable probability, continue to be incurred through his 18th birthday;

  c. Physical pain and suffering, mental pain and anguish of N.W. in the past, which will, in all reasonable probability, continue to be incurred through his 18th birthday;

  d. Permanent physical impairment and disfigurement of N.W. in the past, which will, in all reasonable probability, continue through his 18th birthday.

  e. Severe and permanent physical and neurological damage of N.W. in the past, which will, in all reasonable probability, continue through his 18th birthday.

51. Plaintiffs have been greatly injured and damaged in an amount that is within jurisdictional limits of this Court for which they now plead against Defendants.

52. Plaintiffs are entitled to pre-judgment interest at the highest rate allowed by law, for which they now plead.

WHEREFORE, Plaintiffs Daniel Wu and Emily Wu, Individually and As Next Friends of N.W. pray that Defendants Texas Children's Hospital and Baylor College of Medicine be served with process and that upon trial by jury that Plaintiffs have verdict and judgment against Defendants, jointly and severally, for actual damages shown and proved at trial, for pre-judgment and post-judgment interest, costs of court, and for all other relief at law and in equity to which they are entitled.

Dated: May 19, 2020

Respectfully submitted,

By: __*/S/ Robert W. Painter*__
      Robert W. Painter
      Texas Bar No. 24013284
Painter Law Firm PLLC
12750 Champion Forest Drive
Houston, Texas 77066
Telephone: 281-580-8800
Facsimile: 281-580-8802
Email: rpainter@painterfirm.com

**ATTORNEY FOR PLAINTIFFS, DANIEL WU AND EMILY WU, INDIVIDUALLY AND AS NEXT FRIENDS OF N.W.**